UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMMY JENKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0960-B |
| | § | |
| CITY OF DALLAS | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant City of Dallas ("the City")'s Motion to Dismiss Original Complaint and Brief in Support (Doc. 10). For the reasons given below, the Court **GRANTS** the Motion.

I.

BACKGROUND

This is a workplace discrimination and retaliation case. Plaintiff Tommy Jenkins ("Jenkins") claims that his current employer, the City, has discriminated against him due to his race, gender, and age and has retaliated against him after Jenkins participated in protected activity. *See* Doc. 1, Compl. ¶¶ 60, 66, 72, 78. Specifically, Jenkins, a long time employee of the City, filed a grievance against his then-supervisor for racist and hostile treatment in 2014. *Id.* ¶¶ 20–21. According to Jenkins, the City did not properly handle his grievances and his supervisor threatened to "get Jenkins fired." *Id.* ¶ 24, 26. Years later, in 2020, Jenkins applied for a promotion but did not progress past the first round of interviews despite being "highly qualified." *Id.* ¶¶ 34–36, 38. Jenkins believes his supervisor, who sat on the interview panel, sabotaged his promotion and gave five other less qualified individuals the

- 1 -

promotion instead. *Id.* ¶¶ 39, 46. Jenkins seeks damages to remedy this discrimination and retaliation. *See id.* at 14–15.

Jenkins is a 56-year-old African American male who is currently employed in the City's code enforcement unit as a "Code Officer II." *Id.* ¶¶ 5–9. Since 2013, Jenkins has worked in code enforcement for the City; before that time he "worked for the State of Delaware for 10 years as the Senior Social Worker/Case Manager" and then for the State of Texas's department of Adult Protective Services for four years. *Id.* ¶¶ 11, 13–15. He has a Bachelor of Social Work degree. *Id.* ¶ 10. During his employment with the States of Delaware and Texas he received "Kudos Awards" and other commendations. *Id.* ¶¶ 13, 15. He has also received "Kudos" and recognitions during his employment with the City, and is "one of four Code Officers" in the City "to have obtained an advance[d] International Code Council ICC/American Association of Code Enforcement (AACE) certification [(ICC Certification)]." *Id.* ¶¶ 17–18.

"Despite his background and qualifications, Jenkins has been repeatedly passed over for promotional opportunities which have gone to younger less qualified females or Hispanics." *Id.* ¶ 19. Jenkins traces his "struggles to be promoted . . . to 2014 . . . when [he] filed a series of grievances against his former supervisor Robert Curry [("Curry")]," complaining that Curry "a Caucasian/White male . . . and another supervisor . . . were treating Jenkins in a racist and hostile manner because of Jenkins's race." *Id.* ¶¶ 20–21. Jenkins's initial grievance email "detail[ed] the abuse and hostility he suffered at the hands of . . . Curry" and stated:

> But I be damn if, I except (sic) any harassment from a manager that has and knows very little about, and a supervisor, who shuffles the beat of slavery mentality this is not 1954, 1964, this is 2014 . . . I am a "MAN" and treated both you with respect that neither of you deserve.

*Id.* ¶ 22. This last line "was a reference to the famous 'I am a MAN' placards of the civil rights marches of the 1960s." *Id.* His "subsequent grievance forms" also "stated that he was an African American male and believed that the [C]ity's actions against him were racially motivated and discriminatory." *Id.* ¶ 23.

Jenkins claims that the grievances he filed against Curry "were not properly handled by the City" because it "did not process the grievances to a conclusion or notify Jenkins of any alleged conclusion." *Id.* ¶ 24. "[T]he City will frequently not respond to or fully process employee grievances," he alleges, "effectively rendering the City employees' grievance process ineffective." *Id.* ¶ 25. However, Curry knew of the grievances and responded by "yell[ing] at Jenkins and promis[ing] . . . that he (Mr. Curry) would do what he could to get Jenkins fired." *Id.* ¶ 26. Jenkins notified the City about Curry's threat. *Id.* ¶ 37.

Jenkins was transferred out of Curry's department but thereafter "hit a ceiling on his promotional opportunities at the City." *Id.* ¶ 27. Though he frequently applied "to higher positions," he was not promoted for seven years, while "numerous younger and less senior employees move[d] up the ranks." *Id.* ¶¶ 27–28.

In May 2018, Jenkins and other City employees joined "an overtime lawsuit against the City." *Id.* ¶ 29. "Managers and supervisors within the Code department knew who joined the suit." *Id.*

In April 2019, Jenkins received a temporary promotion but "[d]espite doing very well . . . was moved . . . under a new supervisor" who conducted Jenkins's "six-month review without feedback . . . from [Jenkins's] prior manager," though the prior manager had supervised Jenkins for most of the period under review. *Id.* ¶¶ 30–31.  In October of that year, Jenkins was "denied the promotion opportunity . . . and . . . told by the director of the department that he (the director) could not 'go

against his supervisor or management team.'" *Id.* ¶ 32.

Jenkins sought promotion again in December 2020, applying for five open Supervisor II positions. *Id.* ¶¶ 34–36. But Curry was part of the interview panel for those positions and Jenkins, though highly qualified, did not advance to the second round of interviews. *Id.* ¶¶ 36–38. Jenkins later learned that "Curry gave Jenkins negative rankings which caused Jenkins to not be considered for even the second round of interviews despite his excellent qualifications." *Id.* ¶ 46.

Jenkins pleads that he "was more qualified than" four of the five individuals chosen for the Supervisor II positions: Servando Galvez (Galvez), Jeanne Robbins (Robbins), William Castillo (Castillo), and Corey Blacksher (Blacksher]. *Id.* ¶¶ 39–40. Specifically, he pleads that "Galvez . . . a Hispanic male in his mid-late 30's . . . only had 3-4 years of code compliance experience at the time . . . [and] had no general Code experience at the time of the promotion." *Id.* ¶ 41. "Robbins . . . a Black female in her mid/late 30's . . . only had 5 to 6 years of code compliance." *Id.* ¶ 42. "Castillo . . . a Hispanic male in his early/mid 40's . . . only had 3-4 years of experience in Code Compliance . . . . [and] no current knowledge of specialized units or general code." *Id.* ¶ 43. "Blacksher . . . a Black male in his early/mid 40's . . . only had 2-3 years in Code Compliance." *Id.* ¶ 44. Jenkins had trained both Galvez and Robbins, had longer tenure and more experience than any of those selected, and had obtained his ICC certification while those selected had not. *Id.* ¶¶ 41–44, 48. None of these four promoted individuals had been "plaintiffs in the overtime lawsuit" or "previously complained of race discrimination." *Id.* ¶ 49.

In April 2022, after receiving a right to sue notice from the Equal Employment Opportunity Commission (EEOC) and requesting such notice from the Texas Workforce Commission (TWC), Jenkins filed the instant suit claiming that by denying him these promotional opportunities after

2014, the City discriminated against him on the basis of race, gender, and age. *Id.* ¶¶ 47, 50, 57–58. He also claims that the city retaliated against him "because of his protected activities." *Id.* ¶ 51. He brings his claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Texas Commission on Human Rights Act ("TCHRA"). *Id.* ¶¶ 52–55.

The City now moves to dismiss all of Jenkins's claims under Federal Rule of Civil Procedure 12(b)(6). Doc. 10, Mot. Dismiss 1. The motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

## III.

## ANALYSIS

The City moves to dismiss all of Jenkins's claims for failure to state a claim upon which relief can be granted. Doc. 10, Mot. 1. The City argues that: (1) Jenkins's Section 1981 claim fails for failure to plead under Section 1983; (2) even if the Section 1981 claim survived, it would fail under Section 1983 for failure to allege the existence of an official policy or custom; (3) several of Jenkins's Title VII, ADEA, and TCHRA claims are time-barred; (4) Jenkins's race, gender, and age discrimination claims are not facially plausible; and (5) Jenkins's retaliation claim is not facially plausible. *Id.* at 1, 4, 6, 9, 14, 16.

The Court addresses these claims in the aforementioned order. The Court finds that each claim is insufficiently pled. Accordingly, the Court dismisses Jenkins's claims without prejudice.

A.    *Section 1981 Claim for Race Discrimination*

Section 1981 ("§ 1981") provides that "[a]ll persons within the . . . United States shall have the same right . . . to make and enforce contracts," which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)–(b). This statute "serves as a

deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race." *Carroll v. Gen. Accident Ins. Co. of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990).

In 1989, the Supreme Court held in *Jett v. Dallas Independent School District,* 491 U.S. 701, 731 (1989), that § 1981 did not provide a separate cause of action against local government entities. The Court concluded that plaintiffs must assert a cause of action against state actors under Section 1983 ("§ 1983") to remedy violations of civil rights under § 1981. *See id.* This holding has led to the dismissal of § 1981 claims against local government entities for the failure to clearly and expressly cite to § 1983. *See Meyers v. La Porte Indep. Sch. Dist.,* 277 F. App'x 333, 335 (5th Cir. 2007) ("Because Meyers brought her § 1981 claim independently of her § 1983 claim, the district court did not err by granting summary judgment to LPISD."); *Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002) ("[The plaintiff] failed to invoke the *only* remedy available to him [(§ 1983)] for the claimed deprivation of his § 1981 rights—he has essentially failed to state a claim."); *Oden v. Oktibbeha Cnty., Miss.,* 246 F.3d 458, 464 (5th Cir. 2001) (plaintiff could not state a claim under § 1981 due to failure to plead under § 1983).

However, the Fifth Circuit has cast doubt on "the formalistic approach taken by earlier cases in this circuit[]" regarding § 1981 claims. *See Escamilla v. Elliott*, 816 F. App'x 919, 923 (5th Cir. 2020); *see also Graham v. Bluebonnet Trails Co.,* 587 F. App'x 205 (5th Cir. 2014) ("We have doubts about the district court's denial of [the plaintiff's] section 1981 claim on the ground that she did not cite section 1983 as the procedural vehicle for asserting such a claim[.]"). These doubts stem from the Supreme Court's decision in *Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam). There, the Court reversed the Fifth Circuit's dismissal of a civil rights claim for failure to explicitly invoke § 1983. *Id.* at 11. The Court noted that the Federal Rules of Civil Procedure "do not countenance

dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.*

Here, the City argues that since "Plaintiff has not raised [his discrimination and retaliation claims] pursuant to § 1983 . . . the § 1981 claims are facially invalid." Doc. 10, Mot. 5. Jenkins argues that his § 1981 claims "necessarily refer to the remedy provided by [§] 1983, because the City, a municipality, is a state actor." Doc. 13, Resp. 8. Thus, according to Jenkins, this "implicit reference to [§] 1983" saves his § 1981 claim from dismissal. *Id.*

While a perfect statement of legal theory is not necessary to survive dismissal, Jenkins's Complaint fails to state the *only theory* needed to state a claim. Unlike, the complaint in *Escamilla v. Elliott*, which, while not a "model of clarity[,]" did state that the "action" was "brought under 42 U.S.C. § 1981 and § 1983[,]" Jenkins's Complaint contains no mention of § 1983 anywhere in the document. *See* 816 F. App'x at 924. Permitting implicit references to § 1983 would effectively create an independent cause of action under § 1981 where none exists. *See Jett v. Dallas Independent School District,* 491 U.S. 701, 735 (1989) ("We hold that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the *exclusive federal damages remedy* for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.") (emphasis added).

Even if Jenkins's "implicit reference" to § 1983 sufficiently stated a claim, Jenkins fails to plead sufficient facts to state a claim under § 1983. "A municipality is a 'person' subject to suit under § 1983 under certain circumstances." *Linicomn v. City of Dall.*, 2015 WL 5664265, at *2 (N.D. Tex. Sept. 25, 2015) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)). More specifically, "municipal liability under [§] 1983 requires proof of three elements: a policymaker; an

official policy [or custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). For that reason, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* (internal footnote omitted). In other words, respondeat superior liability will not do—a municipality may be held liable only if a constitutional right was deprived under the guise of an official policy or custom. *See Linicomn*, 2015 WL 5664265, at *2.

First, whether a city official is a policymaker is a question of state law to be determined by the Court. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "State law, including valid local ordinances and regulations, 'will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business.'" *Dall. Police Ass'n v. City of Dall.*, 2004 WL 2331610, at *4 (N.D. Tex. Oct. 15, 2004) (citing *Praprotnik*, 485 U.S. at 125). The Fifth Circuit has held that under Texas law, the final policymaker for the city of Dallas is the Dallas City Council. *Groden v. City of Dall.*, 826 F.3d 280, 286 (5th Cir. 2016); *Bolton v. City of Dall., Tex.*, 541 F.3d 545, 550 (5th Cir. 2008) (consulting the Texas Government Code to determine the policymaker for Texas cities). Thus, to survive a motion to dismiss, Jenkins must plead facts which establish that the challenged policy was promulgated or ratified by Dallas City Council.

Next, to plead a municipal liability claim, a plaintiff must demonstrate that "the allegedly unconstitutional action constitutes a 'custom or policy' of the municipality." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010). There are two kinds of "official policies" in the § 1983 context: (1) "a policy statement formally announced by an official policymaker," or (2) a "persistent

widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168–69 (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). To plead that a custom or policy exists, a plaintiff must show either "a pattern of unconstitutional conduct . . . on the part of municipal actors or employees" or that "a final policymaker took a single unconstitutional action." *Id.* at 169 (emphasis omitted). But just alleging that a policy exists will not do—"[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

The City argues that Jenkins's Complaint "fails to reference or even allude to" any policy or custom among city officials. Doc. 10, Mot. 6–7. Jenkins argues that the Complaint has alleged a policy or custom. *See* Doc. 13, Resp. 9. Jenkins alleges that: (1) "[t]he City did not process the grievances to a conclusion or notify Jenkins of any alleged conclusion"; (2) "the City will frequently not respond or fully process employee grievances"; (3) "the City of Dallas allowed Mr. Curry to be on the interview panel despite the fact that Jenkins had previously filed written grievances against Mr. Curry"; and (4) "Curry was allowed to be on the interview panel despite the fact that Jenkins had previously notified the City that Curry had threatened Jenkins that he would make sure Jenkins never advanced within the City and that he would do what he could to make sure Jenkins was fired." Doc. 1, Compl. ¶¶ 24, 25, 36, 37. Jenkins's Response also alleges that "the underlying and systemic problem is the City of Dallas' wholesale failure to have training, procedures, and systems in place to fully respond to grievances alleging race discrimination and to have training, procedures, and systems

in place to prevent discrimination and retaliation in the promotional interview process." Doc. 13, Resp. 10.

Jenkins's Complaint fails to allege facts that create a reasonable inference of a "policy statement" or a "persistent widespread practice" promulgated or ratified by the Dallas City Council. Jenkins only pleads isolated incidents confined solely to his personal experience. Jenkins does not explain the City's grievance policy or how the processing of his grievances "felt, and [was] futile." *See* Doc. 1, Compl. ¶ 24. The Court cannot conclude that the City did "not respond to or fully process" Jenkins's grievances without any details of the City's actions regarding the grievance. *See id.* ¶ 25.

Additionally, Jenkins attempts to extrapolate a custom of "not respond[ing] or fully process[ing] employee grievances" from his alleged negative experience with the grievance process. *See id.* But one instance of alleged ineffectiveness does not create a custom and "[c]onclusory allegations of 'customs, practices, or procedures' are not sufficient." *G.M. ex rel. Lopez v. Aledo Ind. Sch. Dist.*, 2014 WL 1084170, at *5 (N.D. Tex. Mar. 18, 2014), *aff'd*, 595 Fed. Appx. 262 (5th Cir. 2014); *see Bennett v. City of Slidell,* 728 F.2d 762, 768 n.3 (5th Cir. 1984), *cert. denied,* 472 U.S. 1016, 105 (1985) ("An isolated incident is insufficient to show a custom."). Similarly, even if Curry made racist and hostile comments to Jenkins and sabotaged Jenkins's interview, this act alone cannot create liability under § 1983. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010) ("A municipality is almost never liable for an isolated unconstitutional act on the part of an employee."). Finally, Jenkins's bald assertion in his Response that the City failed "to have training, procedures, and systems in place" regarding discrimination and retaliation appears nowhere in his Complaint and is purely conclusory. *See Spiller*, 130 F.3d at 167 (descriptions of policies or customs must contain specific facts).

Jenkins also inadequately pleads the third element of his § 1983 claim—that there was a violation of constitutional rights whose moving force was the identified policy or custom—because he inadequately pled the first two elements. The third element requires a plaintiff to "show both culpability and a direct causal link between the municipal policy and the constitutional violation." *Gordon v. Neugebauer*, 2014 WL 5531734, at *7 (N.D. Tex. Oct. 31, 2014) (citing *Piotrowski*, 237 F.3d at 578). And because Jenkins failed to identify an official policy or custom promulgated by the Dallas City Council, he "is unable to identify any causal link between the alleged policy and the alleged constitutional violation." *See id.*

Jenkins "has failed to invoke the only remedy available to him for the claimed deprivation of his § 1981 rights[.]" *Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002), *overruled on other grounds*. Additionally, he fails to adequately plead sufficient facts to state a claim under § 1983. Thus, Jenkins has failed to state a claim, and the Court **DISMISSES WITHOUT PREJUDICE** the § 1981 claim.

B.      *Timeliness*

A plaintiff must exhaust certain administrative remedies before filing a charge of discrimination under Title VII, the ADEA, and TCHRA. Title VII and the ADEA both require that a plaintiff file a charge of discriminatory conduct with the EEOC within 300 days after the alleged unlawful act occurs. *EEOC. v. Com. Off. Prod. Co.*, 486 U.S. 107, 107 (1988); *Anson v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 962 F.2d 539, 540 (5th Cir. 1992). TCHRA requires a complaint be filed with the Texas Workforce Commission no later than 180 days after the alleged unlawful act occurs. Tex. Lab. Code § 21.202(a).

The City argues that any allegation of discrimination which occurred before either July 15, 2020 or November 12, 2020 (300 days and 180 days, respectively, from when Jenkins filed his charge

with the EEOC and TWC) is time-barred under Title VII, the ADEA and TCHRA. Doc. 10, Mot. 9. Jenkins responds that he does not seek relief for any action "before the issues specifically outlined in his EEOC charge" and that any prior incident included in the Complaint is evidence that supports his claims. Doc. 13, Resp. 11.

Jenkins's EEOC charge of discrimination and retaliation was filed on May 11, 2021. Doc. 1, Compl. ¶ 56. Any improper action that occurred 300 days prior to that filing, or July 15, 2020, is therefore time-barred under Title VII and the ADEA. *See Anson*, 962 F.2d at 540. Thus, Jenkins's allegations of racist treatment in 2014, the ineffective grievance process thereafter, and any denial of promotion prior to July 15, 2020 under Title VII and the ADEA are time-barred. *See* Doc. 1, Compl. ¶¶ 21–27.

Jenkins's TWC charge of discrimination and retaliation was also filed on May 11, 2021. *Id.* ¶ 56. Any improper action that occurred 180 days prior to that filing, or November 12, 2020, is therefore time-barred under TCHRA. *See* Tex. Lab. Code § 21.202(a). Thus, Jenkins's allegations of racist treatment in 2014, the ineffective grievance process thereafter, and any denial of promotion prior to November 12, 2020 under TCHRA are time-barred. *See* Doc. 1, Compl. ¶¶ 21–27.

To the extent that Jenkins's Complaint seeks relief for these time-barred actions under Title VII, the ADEA, and TCHRA, these claims must be **DISMISSED WITHOUT PREJUDICE**.

C.    *Title VII and TCHRA Claims for Race and Gender Discrimination*

Title VII makes it unlawful for employers to "discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race [or] . . . sex." 42 U.S.C. § 2000e-2(a)(1). In order to establish a prima facie case of

discrimination under Title VII,[1] a plaintiff must demonstrate: "(1) that [he] is a member of a protected class; (2) that [he] was qualified for the position at issue; (3) that [he] was the subject of an adverse employment action; and (4) that [he] was treated less favorably because of [his] membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Moore v. Univ. Miss. Med. Ctr.*, 719 F. App'x 381, 385 (5th Cir. 2018) (quotation marks and alterations omitted) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). At the pleading stage, a plaintiff may survive a Rule 12(b)(6) motion without pleading a prima facie case, however, courts can and do consider these elements at this stage. *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 652 (N.D. Tex. 2019). Ultimately, the complaint must give the defendant fair notice of the plaintiff's claims and the grounds upon which they rest. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514–15 (2002).

The City argues that Jenkins fails to establish elements two and four. The City contends that Jenkins did not "establish why any particular experience or certification qualified him for the Supervisor II position which he sought." Doc. 10, Mot. 11. The City also argues that Jenkins does not allege facts that "point to the conclusion that his race or gender were used a factor with respect to the employment decision." *Id.* at 12. Finally, the City argues that Jenkins did not identify a similarly situated coworker who received more favorable treatment. *Id.*

---

[1] "Because one of the purposes of the TCHRA [Texas Commission on Human Rights Act] is 'to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,'" the Texas Supreme Court has "held that those analogous federal statutes and the cases interpreting them guide [its] reading of the TCHRA." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (citation omitted). As such, the Court will not conduct a separate analysis of Jenkins's TCHRA claims, as the analyses and holdings will be identical to Jenkins's Title VII claims.

- 14 -

Jenkins responds that the Complaint provides "a very detailed recitation of [his] impressive qualifications." Doc. 13, Resp. 12. Additionally, Jenkins argues that he has identified several individuals outside his protected class that were treated more favorably than him. *Id.* at 12–13. Finally, Jenkins accuses the City of confusing "jury argument[s]" with "motion to dismiss argument[s]" by lumping the five promotions at issue together. *Id.* at 13.

The Court finds that Jenkins has failed to plead that he was qualified for the position at issue. Jenkins states that his ten years as a Senior Social Work/Case Manager for the State of Delaware, four years at the Adult Protective Services for the State of Texas, and eight years as a Code Officer II for the City of Dallas, along with the various certifications, commendations, and awards he has received, make him "highly qualified for the [Supervisor II positions.]" Doc. 1, Compl. ¶¶ 7, 11, 13–15, 17–18, 38. However, Jenkins has not pled the requisite qualifications considered for the position of Supervisor II or how his previous experience supports his qualification for this role. The Court cannot summarily conclude that Jenkins's experience in a wholly different role automatically qualifies him for a promotion without sufficient information as to what the role entails. Without more, any statement that Jenkins was qualified for the Supervisor II position is purely conclusory.

Jenkins also fails to plead sufficient facts that he was treated less favorably because of his race or gender. Despite Jenkins's claims that he has pled a comparator outside of his protected class (Doc. 13, Resp. 14), nowhere in the Complaint does Jenkins allege any facts suggesting that the four promoted individuals were similarly situated to Jenkins. *See Lee*, 574 F.3d at 259–60 (factors contributing to employees being similarly situated include same supervisors, same divisions, same work responsibilities, similar violation histories). Jenkins only pleads the promoted individuals' years of experience and omits details such as the position each individual held or any other relevant

qualifications. *See* Doc. 1, Compl. ¶¶ 41–44. While Jenkins need not establish the "nearly identical circumstances" of these comparators at the pleading stage, Jenkins must allege the "ultimate elements" of his claims to survive a motion to dismiss. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767–68 (5th Cir. 2019) (holding that such issues were "more suited to the summary judgment phase[,]" but a plaintiff must still allege a plausible claim). Here, Jenkins has failed to do so.

Additionally, Jenkins's "better qualified" argument fails to save his Complaint (*See* Doc. 13, Resp. 14), because, as discussed above, Jenkins has failed to plead that he was qualified for this position. The Court cannot assume that Jenkins was better qualified for the role of Supervisor II than the promoted individuals, even at the pleading stage, without facts first showing that *Jenkins was indeed qualified* for the promotion. For these reasons, Jenkins's race and gender discrimination claims must be **DISMISSED WITHOUT PREJUDICE**.

D.      *ADEA and TCHRA Claims for Age Discrimination*

The ADEA[2] makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a claim of age discrimination under the ADEA, a plaintiff must show that he (1) was within the protected class; (2) was qualified for the position; (3) suffered an adverse employment decision; and (4) was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. *Keller v. Coastal Bend Coll.*, 629 F.

---

[2] The prima facie case for age discrimination under TCHRA mirrors the prima facie case under the ADEA aside from the third element, which is discussed below. *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 n.2 (5th Cir. 2015) (applying the TCHRA elements and the ADEA elements to the plaintiff's claims).

App'x 596, 600 (5th Cir. 2015) (citing *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)). "Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *Leal v. McHugh*, 731 F.3d 405, 411 (5th Cir. 2013) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). Although one need not plead a *prima facie* age discrimination claim to survive a motion to dismiss, a plaintiff must plead "sufficient facts on all of the ultimate elements . . . to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam).

"[B]ecause liability for disparate treatment under the ADEA depends on whether age actually motivated the employer's decision, a plaintiff must set forth allegations that would enable the court to reasonably infer that the employer took the adverse employment action because of the plaintiff's age." *Owen v. Stmicroelectronics, Inc.*, 2016 WL 2757368, at *5 (N.D. Tex. May 12, 2016) (citations and internal quotation marks omitted). In other words, under the ADEA, a plaintiff must show "that his age was the 'but-for' cause of his employer's decision." *Id.* In contrast, under TCHRA, a plaintiff "need only show that age was a 'motivating factor' in the defendant's decision," as opposed to the "but for" causation standard used under the ADEA. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citing *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001)).

The City challenges whether Jenkins was qualified for the position and whether Jenkins has plead that he was not selected because of his age. In fact, the City argues that several facts cut against Jenkins's argument that he was not selected for the Supervisor II position because of his age. Doc. 10, Mot. 15. First, it argues that Jenkins merely estimated the ages of the promoted individuals,

and several were not significantly younger. *Id.* Second, it points out that Jenkins did not identify the age of the "mysterious fifth individual." *Id.* Third, the City argues that Jenkins did not allege that the documentation obtained through Jenkins's FOIA request suggested that Curry's negative rankings were "in response to or motivated by his age." *Id.*; *see* Doc. 1, Compl. ¶¶ 45–46. Fourth, it asserts that Jenkins's arguments that he was not selected because of his race, gender, and in retaliation for his protected speech undermine his claim that his age was the "but-for" cause of the promotion denial. *See* Doc. 10, Mot. 15. Jenkins argues that the City's case law supporting its "not significant younger" argument is inapplicable and that "but-for does not mean 'sole' cause or 'solely,'" so his age claim can exist alongside his other discrimination claims. Doc. 13, Resp. 15–16.

The Court finds that Jenkins has alleged sufficient facts to plead he was not selected for the promotion because of his age. Jenkins is correct that he "need not plead that age was the sole cause of [his] injury to survive a motion to dismiss." *Leal*, 731 F.3d at 415. And "[w]hile most circuits have generally agreed that age ranges above ten years are significant (and those below are not), [the Fifth C]ircuit has not established such a bright-line rule." *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 323 (5th Cir. 2021), *cert. denied,* 142 S. Ct. 216 (2021). Thus, Jenkins's allegations that the promoted individuals' estimated ages ranged from ten to twenty years younger than him sufficiently plead that he was not promoted in lieu of substantially younger individuals.

However, as explained above in reference to Jenkins's race and gender discrimination claims, Jenkins has not adequately pled that he was qualified for the promotion. Thus, Jenkins fails to state a claim for age discrimination and the claim must be **DISMISSED WITHOUT PREJUDICE**.

E.  *Title VII, ADEA, and TCHRA Claims for Retaliation*

To state a claim of retaliation, a plaintiff must show (1) that he engaged in a protected activity, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 610 (5th Cir. 2005). A plaintiff has engaged in protected activity if he either "oppos[es] any practice made an unlawful employment practice by [Title VII or the ADEA] or . . . ma[kes] a charge, testif[ies], assist[s], or participat[es] in any manner in an investigation, proceeding or hearing under [Title VII or the ADEA]." 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). "The protected activity need not be the sole factor motivating the employer's challenged decision in order to establish the causal link element." *Tapley v. Simplifile, LC*, 2020 WL 208817, at *3 (N.D. Tex. Jan. 14, 2020) (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)) (citations and internal quotation marks omitted).  But, to establish a causal connection between the protected activity and the adverse employment action taken by the employer, the plaintiff must plead that the employer was aware of the protected activity. *See id.*

The City disputes elements one, the existence of protected activity, and three, a causal connection between the activity and the employment action. First, the City argues that Jenkins failed to plead that he engaged in protected activity because the two alleged protected activity did not involve violations under Title VII, the ADEA, or TCHRA. Doc. 10, Mot. 17. The City also argues that Jenkins failed to plead "a reasonable causal connection" to these alleged protected activities and the denial of the promotion. *Id.* at 18. Jenkins responds that he need not use "magic words" to state a claim when the allegations in the Complaint plainly state that Jenkins complained of illegal employment practices. Doc. 13, Resp. 18. Additionally, Jenkins argues that the proposition that his

- 19 -

protected activity occurred too long ago to constitute a causal connection is a "summary judgment type argument" that "fails to take [his] pleadings as true and in a light most favorable to [him.]" *Id.*

First, Jenkins has not alleged any existence of protected activity related to age discrimination. The two instances of alleged protected activity relate to the overtime suit and the grievances regarding Curry's allegedly racist comments towards Jenkins. *See* Doc. 1, Compl. ¶¶ 22–23, 29. Without having engaged in protected activity related to the ADEA, Jenkins cannot state a claim for retaliation under the ADEA. *See Heggemier v. Caldwell Cnty.*, 826 F.3d 861, 869 (5th Cir. 2016) (citation omitted) ("[A] plaintiff has engaged in protected activity if he has opposed any practice forbidden by the ADEA."). For these reasons, his retaliation claim under the ADEA must be dismissed.

Next, Jenkins's participation in the overtime lawsuit cannot constitute protected activity under Title VII. Jenkins has alleged no facts which suggest that this lawsuit involved "any practice made an unlawful employment practice by [Title VII.]" 42 U.S.C. § 2000e-3(a). Jenkins appears to concede this point in his Response by only discussing his grievances against Curry. *See* Doc. 13, Resp. 17.

The grievances against Curry do constitute protected activity under Title VII. "The filing of an internal discrimination complaint is a protected activity." *Reffell v. Tex. Dep't of Aging & Disability*, 2008 WL 11348327, at *6 (N.D. Tex. Sept. 5, 2008) (citing *Fierros v. Tex. Dep't of Health,* 274 F.3d 187, 194 (5th Cir. 2001)). And while the City is correct that Jenkins does not explicitly state in his Complaint that his grievances alleged violations of Title VII, the Court can reasonably infer that Jenkins' grievances about racist and hostile treatment involved an unlawful employment practice under Title VII.

Whether Jenkins has sufficiently alleged a causal connection between the protected activity and the adverse employment action is a closer question. Evidence of a causal connection can include "temporal proximity between a protected act and adverse employment action; an employment record that does not support the adverse action; and an employer's departure from typical policies and procedures." *Garvin,* 391 F. Supp. 3d at 653. Temporal proximity alone cannot establish a causal connection when the acts are separated by more than five months. *Id.* (citing *Feist v. La., Dep't of Just., Off. of the Atty. Gen.,* 730 F.3d 450, 454 (5th Cir. 2013)). Here, Jenkins's protected activity occurred six years before he was denied the promotion. *See* Doc. 1, Compl. ¶¶ 22, 34 (protected activity occurred in 2014 and denial of promotion occurred in 2020). Without more, this temporal proximity cannot establish a causal connection. *See Garvin*, 391 F. Supp. 3d at 653 (alleging a one year gap alone between protected activity and an adverse employment action was insufficient to satisfy a causal connection at the pleading stage).

Jenkins has not pled sufficient, additional evidence to support a causal connection. He claims that after he filed his grievance, Curry "yelled at [him] and promised [him] that he would make sure Jenkins never got a promotion[.]" *See* Doc. 1, Compl. ¶ 26. However, this alleged incident cannot overcome the seven year temporal proximity, because it also is pled to have occurred in 2014. *Id.* Additionally, Jenkins does not plead any departure from policies and procedures by the City during the interview process. *Cf. Garvin*, 391 F. Supp. 3d at 653 (finding a causal connection where the protected occurred one year before the adverse action and the plaintiff alleged that the defendant "failed to follow its usual policies in reassigning him"). And as explained above, Jenkins has not established that he was qualified for the Supervisor II role, so he has not plead that his employment

record did not warrant a denial of the promotion. For these reasons, Jenkins has not pled sufficient facts to establish a retaliation claim and his claims must be **DISMISSED WITHOUT PREJUDICE.**

F.      *Leave to Amend*

Given that this is the Court's first opportunity to assess the sufficiency of Jenkins's allegations, the Court deems it appropriate to provide him one chance to amend his pleadings in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). The amended complaint shall be filed within **TWENTY-ONE DAYS** of the date of this Order.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the City's Motion to Dismiss Original Complaint. Jenkins's claims are each **DISMISSED WITHOUT PREJUDICE.** The Court **GRANTS LEAVE** for Jenkins to file an Amended Complaint **WITHIN TWENTY-ONE DAYS** of this Order to the extent that they can remedy the pleading defects identified therein.

SO ORDERED.

SIGNED: October 6, 2022.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE