UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMMY JENKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0960-B |
| | § | |
| CITY OF DALLAS, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Dallas, Texas ("the City")'s Motion to Dismiss First Amended Complaint and Brief in Support (Doc. 22). For the reasons given below, the Court **GRANTS** the Motion.

### I.

### BACKGROUND[1]

This is a workplace discrimination and retaliation case. Plaintiff Tommy Jenkins ("Jenkins") claims that his current employer, the City, discriminated against him due to his race, gender, and age. *See* Doc. 21, Am. Compl., ¶¶ 73, 79, 85. Further, he claims the City retaliated against him for participating in protected activity. *Id.* ¶ 91. Specifically, Jenkins, a long-time employee of the City, filed a grievance against his then-supervisor for racist and hostile treatment in 2014. *Id.* ¶ 21. According to Jenkins, the City did not properly handle his grievance, and his supervisor threatened to ensure Jenkins never received a promotion. *Id.* ¶¶ 27, 33. Years later, in 2020, Jenkins applied for a promotion but did not progress past the first round of interviews despite being "highly

---

[1] The Court draws its factual background from Jenkins's Amended Complaint. *See* Doc. 21, Am. Compl.

-1-

qualified." *Id.* ¶¶ 44–47. Jenkins believes his former supervisor, who sat on the interview panel, sabotaged his promotion and gave other less qualified individuals the promotion instead. *Id.* ¶¶ 48, 62. Jenkins seeks damages to remedy this alleged discrimination and retaliation.

Jenkins is a fifty-seven-year-old African American male who is currently employed in the City's code enforcement unit as a "Code Officer II." *Id.* ¶¶ 5–9. Since 2013, Jenkins has worked in code enforcement for the City. Id. ¶¶ 5–6. Before then, he "worked for the State of Delaware for 10 years as the Senior Social Worker/Case Manager" and the State of Texas's department of Adult Protective Services for four years. *Id.* ¶¶ 11, 13–15. He has a Bachelor of Social Work degree. *Id.* ¶ 10. During his employment with the States of Delaware and Texas he received "Kudos Awards" and other commendations. *Id.* ¶¶ 13, 15. He has also received "Kudos" and recognitions during his employment with the City and is "one of four Code Officers" in the City "to have obtained an advance[d] International Code Council ICC/American Association of Code Enforcement (AACE) certification [('ICC Certification')]." *Id.* ¶¶ 17–18.

"Despite his background and qualifications, Jenkins has been repeatedly passed over for promotional opportunities which have gone to younger[,] less qualified females or Hispanics." *Id.* ¶ 19. Jenkins traces his "struggles to be promoted . . . to 2014 . . . when [he] filed a series of grievances against his former supervisor Robert Curry." *Id.* ¶¶ 21–22. He claims that Curry, "a Caucasian/White male . . . [treated] Jenkins in a racist and hostile manner because of Jenkins's race." *Id.* Jenkins's initial grievance email "detail[ed] the abuse and hostility he suffered at the hands of . . . Curry" and stated:

> But I be damn if, I except [sic] any harassment from a manager that has and knows very little about, and a supervisor, who shuffles the beat of slavery mentality this is not 1954, 1964, this is 2014 . . . I am a "MAN" and treated both you with respect that neither of you deserve.

*Id.* ¶ 23. He explains that this last line "was a reference to the famous 'I am a MAN' placards of the civil rights marches of the 1960s." *Id.* His "subsequent grievance forms" also "stated that he was an African American male and believed that the [C]ity's actions against him were racially motivated and discriminatory." *Id.* ¶ 24.

Jenkins claims that the grievances he filed against Curry "were not properly handled by the City" because it "did not process the grievances to a conclusion or notify Jenkins of any alleged conclusion." *Id.* ¶ 27. Jenkins details his repeated attempts to receive a final resolution on his grievance against Curry, all of which were unavailing. *Id.* ¶ 25. He also alleges that "[n]umerous other City employees . . . have also filed complaints of discrimination and retaliation against City management employees only to have their grievances not timely heard or never heard to a conclusion." *Id.* ¶ 31. Jenkins names two specific individuals, "Ms. S" and "Ms. R," who were eventually terminated after filing grievances against the City. *Id.*

Despite the City failing to resolve Jenkins's grievance, Curry knew of the grievance and responded by "yell[ing] at Jenkins and promis[ing] . . . that he would make sure Jenkins 'never' got a promotion." *Id.* ¶ 33. Jenkins notified the City about Curry's threat. *Id.* ¶ 44. Jenkins was transferred out of Curry's department but thereafter "hit a ceiling on his promotional opportunities at the City." *Id.* ¶ 34. Though he frequently applied "to higher positions," he was not promoted for seven years, while "numerous younger and less senior employees . . . move[d] up the ranks." *Id.* ¶¶ 34–35.

In April 2019, Jenkins received a temporary promotion but "[d]espite doing very well . . . was moved . . . under a new supervisor." *Id.* ¶ 36. This new supervisor conducted Jenkins's "six-month review without feedback . . . from [Jenkins's] prior manager," though the prior manager had supervised Jenkins for most of the period under review. *Id.* ¶ 37. In October of that year,

Jenkins was "denied the promotion opportunity to the position he held on a temporary basis." *Id.* ¶ 38.

Jenkins sought promotion again in December 2020, applying for five open Supervisor II positions. *Id.* ¶ 40. Jenkins claims after submitting his application, he was sent an email by the City stating, "Congratulations! Your education and experience qualify you to be placed on the eligibility list for Supervisor II (code)." *Id.* ¶ 41. But Curry was part of the interview panel for those positions, and Jenkins, though highly qualified, did not advance to the second round of interviews. *Id.* ¶¶ 47–48. Jenkins later learned that, while two of the three panel members gave Jenkins positive rankings, "Curry gave Jenkins negative rankings which caused Jenkins to not be considered for even the second round of interviews." *Id.* ¶ 56.

Jenkins pleads that he "was more qualified than" four of the individuals chosen for the Supervisor II positions: Servando Galvez, Jeanne Robbins, William Castillo, and Corey Blacksher. *Id.* ¶¶ 48–49. Specifically, he pleads that "Galvez . . . a Hispanic male in his mid-late 30's . . . only had 3-4 years of code compliance experience at the time . . . [and] had no general Code experience at the time of the promotion." *Id.* ¶ 50. "Robbins . . . a Black female in her mid/late 30's . . . only had 5 to 6 years of code compliance." *Id.* ¶ 51. "Castillo . . . a Hispanic male in his early/mid 40's . . . only had 3-4 years of experience in Code Compliance . . . . [and] no current knowledge of specialized units or general code." *Id.* ¶ 52. "Blacksher . . . a Black male in his early/mid 40's . . . only had 2-3 years in Code Compliance." *Id.* ¶ 53. Jenkins had trained both Galvez and Robbins, had longer tenure and more experience than the four individuals selected, and had obtained his ICC certification while those selected had not. *Id.* ¶¶ 50–53. None of these four promoted individuals had "previously complained of race discrimination." *Id.* ¶ 59.

In April 2022, after receiving a right to sue notice from the Equal Employment Opportunity Commission ("EEOC") and requesting such notice from the Texas Workforce Commission ("TWC"), Jenkins filed this suit. He claimed that by denying him these promotional opportunities, the City discriminated against him on the basis of race, gender, and age. *Id.* ¶¶ 73, 79, 85. He also claims that the City retaliated against him "because of his protected activities." *Id.* ¶ 61. He brings his claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Texas Commission on Human Rights Act ("TCHRA"). *Id.* ¶¶ 73, 79, 85, 91.

The City again moves to dismiss all of Jenkins's claims under Federal Rule of Civil Procedure 12(b)(6). Doc. 22, Mot. Dismiss, 1. The Motion is fully briefed and ripe for review. The Court considers it below.

## II.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

## III.
## ANALYSIS

The City moves to dismiss all of Jenkins's claims for failure to state a claim upon which relief can be granted. Doc. 22, Mot., 1. The City argues that (1) Jenkins's § 1981 claim fails under § 1983 for failure to allege the existence of an official policy or custom implemented or ratified by a policymaker; (2) Jenkins's race, gender, and age discrimination claims are not facially plausible; and (3) Jenkins's retaliation claim is not facially plausible. *Id.* at 5, 14, 20, 21. The Court addresses these claims below and finds that each claim is insufficiently pled. Accordingly, the Court dismisses Jenkins's claims without prejudice.

A.   *Section 1981 Claim for Race Discrimination*

Section 1981 provides that "[a]ll persons within the . . . United States shall have the same right . . . to make and enforce contracts," which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)–(b). This statute "serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of

race." *Carroll v. Gen. Accident Ins. Co. of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990). In 1989, the Supreme Court held in *Jett v. Dallas Independent School District*, 491 U.S. 701, 731 (1989), that § 1981 did not provide a separate cause of action against local government entities. The Supreme Court concluded that plaintiffs must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981. *See id.* Thus, to determine whether Jenkins states a viable § 1981 claim, the Court considers whether Jenkins has asserted a claim under § 1983.

"A municipality is a 'person' subject to suit under § 1983 under certain circumstances." *Linicomn v. City of Dall.*, 2015 WL 5664265, at *2 (N.D. Tex. Sept. 25, 2015) (Fitzwater, J.) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)). More specifically, municipal liability under § 1983 requires "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002). For that reason, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (internal footnote omitted). In other words, respondeat superior liability will not do—a municipality may be held liable only if a constitutional right was deprived under the guise of an official policy or custom. *See Linicomn*, 2015 WL 5664265, at *2.

First, whether a city official is a policymaker is a question of state law to be determined by the Court. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "State law, including valid local ordinances and regulations, 'will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business.'" *Dall. Police Ass'n v. City of Dall.*, 2004 WL 2331610, at *4 (N.D. Tex. Oct. 15, 2004) (Fitzwater,

J.) (citing *Praprotnik*, 485 U.S. at 125). The Fifth Circuit has held that under Texas law, the final policymaker for the city of Dallas is the Dallas City Council. *Groden v. City of Dall.*, 826 F.3d 280, 286 (5th Cir. 2016); *Bolton v. City of Dall.*, 541 F.3d 545, 550 (5th Cir. 2008) (consulting the Texas Government Code to determine the policymaker for Texas cities). Thus, to survive a motion to dismiss, Jenkins must show that the challenged policy was promulgated or ratified by Dallas City Council.

Next, to plead a municipal liability claim, a plaintiff must demonstrate that "the allegedly unconstitutional action constitutes a 'custom or policy' of the municipality." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010). There are two forms of "official policies" in the § 1983 context: (1) "a policy statement formally announced by an official policymaker," or (2) a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* at 168–69 (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). Additionally, in rare circumstances, "a plaintiff may show the existence of a custom or policy by demonstrating that a policymaker took a single unconstitutional action. Finally, a failure to train may represent a policy for which a municipality may be held liable if the failure to train directly caused the injury." *Liggins v. City of Duncanville*, 2021 WL 929105, at *8 (N.D. Tex. Mar. 11, 2021) (Scholer, J.).

But just alleging that a policy or custom exists will not suffice—"a plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotations and alteration omitted). "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Id.*

Jenkins alleges the City "has a persistent and widespread practice of arguing that an employee's grievance is untimely (when it clearly is not)[,] . . . does not finish investigations or issue findings regarding employee grievances[, and] . . . has no training, procedures, or systems in place for properly handling grievances regarding discrimination and retaliation." Doc. 21, Am. Compl., ¶ 26. The City argues Jenkins has failed to show a policy or custom promulgated by a policymaker, that such policy or custom was the moving force behind his constitutional violations, and a failure to train. *See* Doc. 22, Mot. Dismiss, 5–13. The Court agrees with the City that Jenkins's Amended Complaint fails to state a claim under § 1981.

First, Jenkins has not pleaded that the Dallas City Council has promulgated, ratified, or had any knowledge of a "persistent widespread practice" of improperly-handled employee grievances. "Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster*, at 841; *see also Piotrowski*, 237 F.3d at 578–79 (noting that liability requires actual or constructive knowledge on the part of municipal policymaker). Jenkins makes no mention of the Dallas City Council in his Amended Complaint. This failure alone dooms his § 1981 claim.

However, in addition to failing to identify an action by a policymaker, Jenkins also fails to identify a policy or custom. "Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984); *see also Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020) (holding that pleading the existence of a widespread practice or custom requires more than merely describing the incident that gave rise to the alleged injury). Jenkins alleges that the City has mishandled grievances filed by "[n]umerous other . . . employees." Doc. 21, Am. Compl., ¶ 31. He also alleges he is aware of two former employees, Ms. S and Ms. R, whose "grievances were either not timely heard or were

not heard to a meaningful conclusion." *Id*. Jenkins's allegation regarding the grievances of "numerous other City employees" cannot establish a persistent widespread practice, as it is wholly conclusory and provides the Court no basis to determine if these grievances were "similar incidents" to establish a pattern. *See Sinegal v. City of El Paso*, 414 F. Supp. 3d 995, 1008 (W.D. Tex. 2019) ("While a detailed catalogue of similar incidents may not always be available to plaintiffs at the 12(b)(6) stage, a widespread practice claim must ordinarily at least identify similar incidents to survive dismissal.") (internal quotation and alteration omitted).

Jenkins's allegations regarding Ms. S and Ms. R are similarly unavailing. While these allegations at least partially identify the complainants, Jenkins fails to allege when these grievances were filed, the subject of the grievances, or specific details regarding the City's response to the grievances (or lack thereof). *See* Doc. 21, Am. Compl., ¶ 31. Again, this failure prevents the Court from determining if these grievances were sufficiently similar to Jenkins's experience to support the inference of a pattern. *See Sinegal*, 414 F. Supp. 3d at 1008; *Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016) (per curiam) (holding that "[w]ithout further context surrounding the circumstances," the allegations regarding twenty-one prior incidents spanning nine years did not "plausibly suggest a pattern of abuses"). Further, three alleged incidents over a seven-year period cannot establish a persistent widespread practice. *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989); *see Moreno v. City of Dall.*, 2015 WL 3890467, at *9 (N.D. Tex. June 18, 2015) (Boyle, J.) (finding that eight incidents did "not support an inference of a pattern of abuses that can be distinguished from mere isolated incidents"); *cf. Rivera v. City of San Antonio,* 2006 WL 3340908 at *12 (W.D. Tex. Nov. 15, 2006) (finding that a pattern was alleged by citing that the police department had received hundreds of complaints involving the use of excessive force by officers); *Oporto v. City of El Paso*, 2010 WL 3503457, at *5 (W.D. Tex. Sept. 2, 2010) (finding

that thirty-two incidents of excessive deadly force fell within the "acceptable range of sufficiently numerous prior incidents needed to allege a pattern at th[e motion to dismiss] stage") (internal quotations omitted). Thus, Jenkins fails to allege the existence of a widespread custom to trigger municipal liability.

Finally, Jenkins fails to state a claim that the City failed to train its employees on the grievance policy. "To prevail on a 'failure to train' theory, a plaintiff must demonstrate that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the violations in question." *Liggins*, 2021 WL 929105, at *10. Jenkins merely asserts that "the City has no training, procedures, or systems in place for properly handling grievances regarding discrimination and retaliation." Doc. 21, Am. Compl., ¶ 26. Without further allegations regarding the inadequacy of the City's training, the City's deliberate indifference, or how the inadequate training caused the violation of Jenkins's rights, Jenkins's Amended Complaint fails to state a claim for failure to train under § 1983.

Because Jenkins fails to plead the existence of a custom promulgated or ratified by Dallas City Council or that the City failed to train its employees on the grievance policy, Jenkins's § 1981 claims are **DISMISSED**.

B.   *Title VII and TCHRA Claims for Race and Gender Discrimination*

Title VII[2] makes it unlawful for employers to "discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such

---

[2] "Because one of the purposes of the TCHRA is 'to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,'" the Texas Supreme Court has "held that those analogous federal statutes and the cases interpreting them guide [its] reading of the TCHRA." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (internal footnote omitted). Thus, the Court will not

individual's race [or] . . . sex." 42 U.S.C. § 2000e-2(a)(1). In order to establish a prima facie case of discrimination under Title VII, a plaintiff must demonstrate

> (1) that [he] is a member of a protected class; (2) that [he] was qualified for the position at issue; (3) that [he] was the subject of an adverse employment action; and (4) that [he] was treated less favorably because of [his] membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Moore v. Univ. Miss. Med. Ctr.*, 719 F. App'x 381, 385 (5th Cir. 2018) (internal quotations and alteration omitted). At the pleading stage, a plaintiff may survive a Rule 12(b)(6) motion without pleading a prima facie case, however, courts can and do consider these elements at this stage. *Garvin v. Sw. Corr., L.L.C.,* 391 F. Supp. 3d 640, 652 (N.D. Tex. 2019) (Boyle, J.).

The Court previously dismissed Jenkins's race and gender discrimination claims because he "failed to plead that he was qualified for [the Supervisor II] position." Doc. 20, Mem. Op. & Order, 16. Jenkins now pleads that "he knows he was qualified because the positions were publicly posted and he met the qualifications." Doc. 21, Am. Compl., ¶ 41. Jenkins also claims that after applying for the position of Supervisor II, the City responded, "Congratulations! Your education and experience qualify you to be placed on the eligibility list for Supervisor II (code)." Jenkins's conclusory statement that he knows he met the Supervisor II qualifications does nothing to move the needle toward stating a claim. *See Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). However, the City's alleged response to Jenkins is enough to allow the Court to draw a reasonable inference that Jenkins was qualified for the role.

---

conduct a separate analysis of Jenkins's TCHRA claims, as the analyses and holdings will be identical to Jenkins's Title VII claims.

And while the City argues that being granted an interview is not always equivalent to being qualified for the role, especially because Jenkins failed to allege the requisite qualifications and how he met them, the Court is unconvinced. At the motion to dismiss stage, Jenkins's claim need only be plausible, s*ee Twombly*, 550 U.S. at 570, and stating the requisite qualifications for a role is not required for plausibility. *See Drerup v. Consol. Nuclear Sec., LLC,* 2020 WL 13608068, at *2 (N.D. Tex. May 13, 2020) (Reno, Mag. J.) (finding that the plaintiff did not need to plead the qualifications for the position she was denied to plead a disability discrimination claim if the plaintiff plead other facts indicating she was qualified). Here, the City's alleged statement that Jenkins's education and experience qualified him for "the eligibility list for Supervisor II" creates a reasonable inference that he was qualified for the role.

However, Jenkins fails to demonstrate he satisfies the "ultimate question" of his discrimination claims: "whether [the City] took the adverse employment action against [Jenkins] *because of* [his] protected status." *See Raj v. La. State Univ.,* 714 F.3d 322, 331 (5th Cir. 2013). First, Jenkins's Amended Complaint is devoid of "specific objective incidents of racial discrimination, such as racial comments or treatment different from similarly situated employees of another race." *See Smith v. Dall. Cnty. Hosp. Dist.,* 2014 WL 645248, at *6 (N.D. Tex. Feb. 19, 2014) (Fish, J.). Instead, Jenkins alleges he filed a grievance against Curry over seven years ago for "treating Jenkins in a racist and hostile manner because of Jenkins'[s] race," treating Jenkins "like a slave," and discriminating against him. Doc. 21, Am. Compl., ¶ 23. These conclusory allegations are insufficient to suggest the City's decision to not promote Jenkins seven years later was based on his race. *See Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, Jenkins makes no allegations suggesting the City or Curry ever discriminated against him because of his gender.

Additionally, while the Court can infer Jenkins was qualified for the Supervisor II position from the email from the City referenced above, because Jenkins has not pleaded the requisite qualifications for the role, the Court has no way of determining whether Jenkins was more qualified for this position than the individuals the City promoted. Without these qualifications or a description of the role, the Court has no reference as to what metrics the City used in evaluating candidates for the role of Supervisor II. The Court cannot infer that Jenkins was more qualified than those promoted because Jenkins possessed greater experience in "code compliance" and "had worked in several specialized units within code," without also knowing that this experience was used by the City in evaluating candidates for Supervisor II. *See* Doc. 21, Am. Compl., ¶¶ 50–54; *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (recognizing that greater experience alone does not make a candidate more qualified for a role).

Finally, the promotion of several individuals within Jenkins's protected classes further weakens the inference that Jenkins was not promoted because of his race or gender. Jenkins objects to the City's promotion of four individuals to Supervisor II instead of him, two of which were African American and three of which were males. *See* Doc. 21, Am. Compl., ¶¶ 50–53. The Fifth Circuit has held "the single fact that a plaintiff is replaced by someone within the protected class does not negate the possibility that the discharge was motivated [by] discriminatory reasons."[3] *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246–47 (5th Cir. 1985). But, in *Hornsby*, the Fifth Circuit still affirmed the district court's dismissal of Hornsby's gender discrimination claims "because she

---

[3] The Fifth Circuit later recognized an inconsistency in its later precedents on this subject in *Nieto v. L&H Packing Co.* 108 F.3d 621, 624 n.7 (5th Cir. 1997) (comparing the holding in *Hornsby* to its holding in *Singh v. Shoney's Inc.*, 64 F.3d 217 (5th Cir. 1995), which held that "a plaintiff's replacement by a member of the same protected class precludes the establishment of a prima facie case" of discrimination). However, since *Hornsby* is still good law, the Court will follow its reasoning. *See id.* (noting that the earlier precedent controls).

failed to offer any evidence other than her subjective belief . . . that she was terminated because of her sex." *Id.* at 247. Thus, while the fact that other individuals within Jenkins's protective class were promoted instead of him is not "outcome determinative, [it] is certainly material to the question of discriminatory intent" and can be factored into the Court's analysis as to whether Jenkins has alleged facts demonstrating that the City's decision to not promote Jenkins was because of his race or gender. *See Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 1997). Here, Jenkins has not done so, thus his race and gender discrimination claims are **DISMISSED**.

C.  *ADEA and TCHRA Claims for Age Discrimination*

The ADEA[4] makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case under the ADEA, a plaintiff must show that he "(1) was within the protected class; (2) was qualified for the position; (3) suffered an adverse employment decision; and (4) was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 600 (5th Cir. 2015). "Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *Leal v. McHugh*, 731 F.3d 405, 411 (5th Cir. 2013) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)). Although one need not plead

---

[4] The prima facie case for age discrimination under TCHRA mirrors the prima facie case under the ADEA aside from the third element, which is discussed below. *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 n.2 (5th Cir. 2015).

a prima facie age discrimination claim to survive a motion to dismiss, a plaintiff must plead "sufficient facts on all of the ultimate elements . . . to make his case plausible." *Chhim v. Univ. of Tex. at Austin,* 836 F.3d 467, 470 (5th Cir. 2016) (per curiam).

"[B]ecause liability for disparate treatment under the ADEA depends on whether age actually motivated the employer's decision, a plaintiff must set forth allegations that would enable the court to reasonably infer that the employer took the adverse employment action because of the plaintiff's age." *Owen v. STMicroelectronics, Inc.,* 2016 WL 2757368, at *5 (N.D. Tex. May 12, 2016) (Boyle, J.) (internal quotations and citation omitted). In contrast, under TCHRA, a plaintiff "need only show that age was a 'motivating factor' in the defendant's decision," as opposed to the "but[-]for" causation standard used under the ADEA. *Reed v. Neopost USA, Inc.,* 701 F.3d 434, 439 (5th Cir. 2012) (citing *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex. 2001)).

Here, Jenkins has adequately pleaded that he was qualified for the position of Supervisor II, but his Amended Complaint fails to plead any facts showing that the City's decision to not promote him was because of or motivated by his age. Instead, Jenkins pleads that "[t]he panel interview ratings demonstrate that but for the lower ratings by . . . Curry, . . . Jenkins would have been awarded at least one of the available positions." Doc. 21, Compl., ¶ 56(e) (emphasis omitted). While Jenkins may plead his claims in the alternative, nowhere in his Complaint does he provide any facts suggesting that his age, not Curry's alleged bias, was the but-for cause, or a motivating factor, of the denial of the promotion.

This failure ultimately makes Jenkins's ADEA claim implausible. *See Chhim,* 836 F.3d at 470 (holding a plaintiff need not state a prima facie case to state a claim but must allege "sufficient facts on all of the ultimate elements . . . to make his case plausible"). The Amended Complaint must provide the Court a reasonable basis to infer the denial of the promotion was based on age to

survive a motion to dismiss. *See Leal*, 731 F.3d at 413 (reversing a dismissal of plaintiff's claims despite the "admittedly bare allegations" because the plaintiff sufficiently pleaded he was not promoted because of his age by alleging one of the officials with decision-making authority over the selection, Salinas, said that the department needed "new blood"). Without such a basis, Jenkins's age discrimination claim is **DISMISSED**.

D.      *Title VII, ADEA, and TCHRA Claims for Retaliation*

To state a claim of retaliation, a plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 610 (5th Cir. 2005). A plaintiff has engaged in a protected activity if he either "oppos[es] any practice made an unlawful employment practice by [Title VII or the ADEA] or . . . ma[kes] a charge, testif[ies], assist[s], or participat[es] in any manner in an investigation, proceeding or hearing under [Title VII or the ADEA]." 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). "The protected activity need not be the 'sole factor motivating the employer's challenged decision in order to establish the causal link element.'" *Tapley v. Simplifile, LC*, 2020 WL 208817, at *3 (N.D. Tex. Jan. 14, 2020) (Brown, J.) (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)). But, to establish a causal connection between the protected activity and the adverse employment action taken by the employer, the plaintiff must plead that the employer was aware of the protected activity. *Id.* (citing *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999)).

Evidence of a causal connection can include "temporal proximity between a protected act and adverse employment action; an employment record that does not support the adverse action; and an employer's departure from typical policies and procedures." *Garvin*, 391 F. Supp. 3d at 653. Temporal proximity alone cannot establish a causal connection when the acts are separated by

more than five months. *Id.* (citing *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).

The Court previously dismissed Jenkins's retaliation claim for failure to establish a causal connection between Jenkins's protected activity and the City's decision to not promote him to Supervisor II. Jenkins's claims fail for the same reason now. Again, Jenkins's grievance and the incident where Curry "yelled at [him] and promised [him] that he would make sure Jenkins 'never' got a promotion" occurred seven years ago. *See* Doc. 21, Am. Compl., ¶ 33. As stated previously, this temporal proximity alone cannot establish a causal connection. *See Garvin*, 391 F. Supp. 3d at 653 (finding a one-year gap alone between protected activity and an adverse employment action was insufficient to satisfy a causal connection at the pleading stage). And Jenkins has not pleaded that the City departed from any policies or procedures during the interview process. *Cf. id.* (finding a causal connection where the protected occurred one year before the adverse action and the plaintiff alleged that the defendant "failed to follow its usual policies in reassigning him").

And while Jenkins has established he was qualified for the Supervisor II position, *see supra* Section III.B, the Court still cannot plausibly find his employment record "does not support the adverse action." *See id.* Jenkins has alleged several incidents that could support the City's decision to not promote him. For instance, Jenkins himself admits he has applied to "approximately 85 openings with the City of Dallas" and never received an interview. Doc. 21, Compl., ¶ 20. He also admits he received a temporary promotion but "was eventually denied the promotion opportunity to the position he held on a temporary basis." *Id.* ¶ 38. Finally, Jenkins admits he received a

suspension from the City "regarding his use of City issued pepper spray."[5] *Id.* ¶ 25(l). Given these alleged facts, the Court cannot reasonably draw the inference that Jenkins's employment record did not support the City's denial of the promotion. "[W]ithout other evidence of retaliation," the Court cannot conclude a causal connection exists between the City's decision to not promote Jenkins and his protected activity, which occurred seven years prior. *See Feist*, 730 F.3d at 454 (stating a five-month lapse between the protected activity and adverse action without further evidence cannot support a causal connection). For these reasons, Jenkins's retaliation claim is **DISMISSED**.

E.  *Leave to Amend*

Jenkins does not request leave to amend his pleadings in his Response. *See* Doc. 25, Resp. However, under the Federal Rules of Civil Procedure, the Court should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994).

In determining whether to allow such amendment, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *accord Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

---

[5] Jenkins claims he filed a grievance regarding "the false accusations, untrue statements, and misrepresentation of the facts within the City's suspension," but he does not deny the suspension occurred. *See* Doc. 21, Am. Compl., ¶ 25(l).

Here, the Court finds that it is in the interest of justice that Jenkins be given one additional opportunity to plead his claims. Accordingly, the Court **GRANTS LEAVE** to Jenkins to file an amended complaint. The amended complaint must be filed within **TWENTY-ONE DAYS** of the date of this Order.

## IV.
## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the City's Motion to Dismiss (Doc. 22). Jenkins's claims are **DISMISSED WITHOUT PREJUDICE**. The Court **GRANTS LEAVE** for Jenkins to file an Amended Complaint within **TWENTY-ONE DAYS** of this Order to remedy the pleading defects identified.

SO ORDERED.

SIGNED: May 17, 2023.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE