UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMMY JENKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0960-B |
| | § | |
| CITY OF DALLAS, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant City of Dallas (the "City")'s Motion for Summary Judgment (Doc. 59) and the City's Motion to Strike (Doc. 80). For the following reasons, the Court **GRANTS** the City's Motion for Summary Judgment and **DISMISSES** Plaintiff Tommy Jenkins's Complaint **WITH PREJUDICE**. The Court **DENIES AS MOOT** the City's Motion to Strike. A final judgment will follow.

# I.

# BACKGROUND

This is a workplace discrimination and retaliation case. Jenkins is a 58-year-old African American man. Doc. 74, Pl.'s App'x, 7–8. In 2013, the City hired Jenkins as a "Code Officer II." *Id.* at 7. In his nine years working for the City, Jenkins estimates that he has applied for new positions with the City approximately 85 times. *Id.* at 12. But Jenkins was never selected. *Id.* This lawsuit is about one instance in which Jenkins applied for a promotion but was denied. Specifically, Jenkins alleges that he was denied a promotion to a "Supervisor II" position in 2020 because of his race and in retaliation for engaging in a protected activity in violation of Title VII of

the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act ("TCHRA"). Doc. 31, Am. Compl., 20, 30–31.

A.    *Jenkins's Work History Performance*

Jenkins received a "Highly Successful" performance review in 2014 and a "Fully Successful" review in 2016, 2018, and 2019. Doc. 74, Pl.'s App'x, 10–11. He received a "Less than Fully Successful" review for his performance in 2015. Doc. 61, Def.'s App'x, 150–55. In September 2015, Jenkins was suspended after he unnecessarily sprayed a citizen's dog with mace while inside his City-issued car. *Id.* at 37, 535. In October 2019, Jenkins failed a promotional probationary period because of his "failure to follow verbal directions, incomplete assignments, and . . . disruptive/disorderly behavior during team meetings." *Id.* at 182–83. The City also noted that he was "disrespectful and refused to follow the directive" to provide documentation for medical visits. *Id.* at 207.

B.    *Jenkins's Interactions with Robert Curry*

According to Jenkins, the reason he was denied the promotion in 2020 can be traced back to 2014. Doc. 74, Pl.'s App'x, 13. In 2014, Robert Curry, a white male, was Jenkins's supervisor. *Id.* While he worked under Curry's supervision, Jenkins alleges that Curry engaged in racially discriminatory conduct. For example, Curry allegedly instructed Jenkins "to not issue citations or write-ups for code inspections related to white property owners but stated that citations and write-ups should be issued immediately to black property owners or Hispanic property owners." *Id.* Jenkins also claims that Curry "bragged about being, 'the new sheriff in town,' and he would yell at and treat [Jenkins] and other non-white employees in a hostile and demeaning manner." *Id.* at 14. By contrast, Curry allegedly treated white employees with respect and "would not yell at them or

demean them in front of other employees." *Id.* This preferential treatment "made Jenkins feel like a slave and Mr. Curry was the plantation owner." *Id.*

On one occasion, Curry allegedly "shouted at [Jenkins] in front of the other members of the department, 'I [i.e., Curry] am working on getting your ass out of here and trying to get you fired.'" *Id.* at 14, 159. When Jenkins attempted to remove himself from the situation, Curry followed Jenkins, "made a threatening movement" toward Jenkins, "got right in [Jenkins's] face," and continued to yell and curse at him. *Id.* Jenkins claims that Curry never acted this way toward white employees, and that Curry's actions were racially motivated. *Id.* at 14.

After this altercation, Jenkins filed numerous grievances against Curry for race discrimination with the City. *Id.* at 14–19. Jenkins's initial grievance email "detail[ed] the abuse and hostility [he] suffered at the hands of . . . Curry" and stated:

> But I be damn if, I except [sic] any harassment from a manager that has and knows very little about, and a supervisor, who shuffles the beat of slavery mentality this is not 1954, 1964, this is 2014 . . . I am a 'MAN' and treated both [of] you[1] with respect that neither of you deserve.

*Id.* at 14–15. "This was a reference to the . . . 'I am a MAN' placards of the civil rights marches of the 1960s." *Id.* at 15. When Curry learned of the grievances filed against him, he responded by "yell[ing] at [Jenkins] . . . and promis[ing] . . . that he would make sure [Jenkins] 'never' got a promotion." *Id.* at 20.

Jenkins claims that the grievances he filed against Curry were not properly handled by the City. *Id.* at 20. Despite his repeated attempts to obtain a final resolution of his grievances against Curry, the City did not notify Jenkins of any conclusion. *Id.* at 19.

---

[1] Jenkins also made complaints about another supervisor, Mr. Tellis. Doc. 74, Pls.' App'x, 14.

C.    *The Interview Process for the 2020 Job Promotion*

The incident at the heart of this lawsuit occurred in December 2020, when Jenkins sought a promotion, by applying for one of five open Supervisor II positions. *Id.* at 22. "The qualifications for the [Supervisor II position] . . . included having a high school diploma or GED, five years of experience interpreting and enforcing codes and ordinances, investigating code violations and/or issuing citations, and one year of lead work and/or supervisory responsibilities." *Id.* After he submitted his application for this position, Jenkins was selected for an interview. *Id.* at 23.

Interviews for the Supervisor II position were conducted by a three-member panel. *Id.* The panel consisted of Monica Contreras, Ariel Garcia, and Robert Curry. *Id.* During Jenkins's interview, Curry's "body language and [the] manner in which [he] acted . . . was cold and sent the message that [Jenkins] had no chance to do well in the interview." *Id.* "[T]he other two panel members were verbally interacting with [Jenkins] and . . . telling him things like, 'I like that answer Mr. Jenkins,'" whereas Curry "was cold and silent." *Id.*

Twenty six applicants interviewed for the position. Doc. 61, Def.'s App'x, 188–91. Each candidate was asked the same 11 questions. *Id.* at 192–206, 214. Each of the three panelists separately and independently scored the candidates' responses with a rating of VHQ ("Very Highly Qualified"), HQ ("Highly Qualified"), Q ("Qualified"), or ND ("Not Detected"). *Id.* at 214. Panelists did not discuss candidates' responses to questions. *Id.* at 213. Following the interviews, each candidate received an "Overall Rating" from each panelist. *Id.* at 213.

Panelist Contreras rated Jenkins with a Final Rating of "Highly Qualified," the same rating she gave 13 candidates (50%). *Id.* at 190. Contreras rated seven candidates as "Very Highly Qualified" (27%), and six candidates as "Qualified" (23%). *Id.* at 188–91. Panelist Garcia rated

Jenkins with a Final Rating of "Highly Qualified," the same rating he gave 17 candidates (65%). *Id.* Garcia rated a total of five candidates with an overall rating of "Very Highly Qualified" (20%) and four candidates as "Qualified" (15%). *Id.* Panelist Curry rated Jenkins with a Final Rating of "Qualified," the same rating he gave sixteen candidates (62%). *Id.* Curry rated a total of three candidates with an overall rating of "Very Highly Qualified" (11%) and seven candidates as "Highly Qualified" (27%). *Id.*

The five top-rated candidates were provided to the department Hiring Manager for consideration for the next round of interviews. *Id.* at 214. Jenkins was not among them.

The Hiring Manager also invited six candidates in addition to the top five-rated candidates to the second round of interviews. *Id.* at 212. These candidates were selected based on their "known work history, past and current roles and responsibilities, supervisory experience," discipline history, and current performance within the Department. *Id.* at 214, 490. Jenkins was not one of the six additional candidates invited to interview. *Id.* at 212–13. Ultimately, five candidates were selected for the Supervisor II positions, three of whom were African American and two of whom were Hispanic. *Id.* at 219.

After not receiving the promotion, Jenkins sued the City for Race Discrimination and Retaliation under Title VII of the Civil Rights Act and the Texas Commission on Human Rights Act ("TCHRA"). Doc. 31, Am. Compl., ¶¶ 72–84. The City moved for summary judgment on all claims. Doc. 59, Def.'s Mot. Summ. J., 1–2. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). On a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *See Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.; Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 324). "This burden is not satisfied with some metaphysical doubt as to the material facts, . . . by conclusory allegations, . . . by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (quotations omitted). A non-moving party with the burden of proof must "identify specific evidence in the record and articulate the manner in which that evidence supports that party's

claim," *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004), and "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting FED. R. CIV. P. 56(e)). Finally, the evidence plaintiff proffers "must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

## III.

## ANALYSIS

A.    *The City Is Entitled to Summary Judgment on Jenkins's Discrimination Claims.*

The Court **GRANTS** the City's Motion for Summary Judgment on Jenkins's discrimination claims. A plaintiff "may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023). Where, as here, the plaintiff offers no evidence of intentional discrimination, the claim is analyzed under the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

At the first step of the *McDonnell Douglas* framework, a plaintiff must make out a prima facie case of discrimination. *McCoy*, 492 F.3d 551 at 556. "The particular elements of a prima facie case of discrimination vary slightly depending on the nature of the claim." *Lee v. BASF Corp.*, No. 4:22-CV-01581, 2023 WL 7336871, at *2 (S.D. Tex. Nov. 7, 2023). In a failure-to-promote case, a plaintiff can establish a prima facie case by demonstrating that "(1) she belongs to a protected class; (2) she was qualified for the position sought; (3) she was not promoted; and (4) the position she sought was filled by someone outside the protected class." *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001).

"If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy*, 492 F.3d 551 at 557. "This burden on the employer is only one of production, not persuasion, involving no credibility assessments." *Russel v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

"If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *McCoy*, 492 F.3d at 557.

The TCHRA is "effectively identical to Title VII." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633 (Tex. 2012). "Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' [the Texas Supreme Court] ha[s] consistently held that those analogous federal statutes and the cases interpreting them guide [its] reading of the TCHRA." *Id.* at 633–34 (internal citation omitted). As a result, Texas courts mostly follow the *McDonnell Douglas* framework for analyzing discriminatory treatment under the TCHRA. *Id.* at 634.

1.  Jenkins Established a Prima Facie Case of Discrimination.

Establishing a prima facie case is not an "onerous" burden. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Jenkins easily establishes the first three elements for a prima facie case of discrimination. First, it is undisputed that Jenkins, an African American, is a member of a protected class. Second, he was qualified for the advertised position. The City stated that candidates can only interview for a position with the City if they meet the minimum qualifications for the position. *See* Doc. 61, Def.'s App'x, 217, 439–40. Because Jenkins was invited to interview,

he met the minimum qualifications for the position. Third, he applied for a promotion and did not receive it.

To satisfy the fourth element in the failure-to-promote context, a plaintiff must establish that the position he sought was filled by someone outside his protected class or that the employer "continued to seek applicants with the plaintiff's qualifications." *McMullin*, 782 F.3d at 258. The City argues that Jenkins did not establish a prima facie case of discrimination because Jenkins was required "to establish that he was treated less favorably than similarly situated employees outside of his protected class." Doc. 60, Def.'s Mot. Summ. J, 13. The City then explains why it believes the two Hispanic officers promoted are not similarly situated comparators. *Id.* at 13–16. But Jenkins only needs to establish that someone outside of his protected class was hired to prove his prima facie case. *See Chapple v. Texas Health & Hum. Servs. Comm'n*, 789 F. App'x 985, 989 (5th Cir. 2019) (finding the plaintiff "easily m[et]" the fourth element because "the position was ultimately filled by a white woman," while the plaintiff was black). At this stage, the Court need not analyze whether they were similarly situated.

The City also argues that Jenkins failed to establish that the City sought applicants outside of Jenkins's protected class because three of the five individuals promoted were African American. Doc. 60, Def.'s Mot. Summ. J., 15, 37–38. The City cites two unpublished opinions to support this proposition. First, in *Bright v. GB Bioscience Inc.*, the Fifth Circuit found that the plaintiff failed to establish a prima facie case because the defendant hired someone from the plaintiff's protected class. 305 F. App'x 197, 204 (5th Cir. 2008). Similarly, in *Lane v. Ridge*, the court found that the plaintiff did not establish a prima facie case because eight of the 26 applicants selected were in the same protected class as the plaintiff. No. Civ.A. 302-CV-1765-BF, 2005 WL 57289, at *2 (N.D. Tex.

Jan. 10, 2005) (Stickney, M.J.). However, the fourth element can be satisfied when a person of the same race is hired as a "pretextual device, specifically designed . . . to disguise [an] act of discrimination" or by introducing evidence that "give[s] rise to an inference of unlawful discrimination." *Jones v. Western Geophysical Co. of Am.*, 669 F.2d 280, 284 (5th Cir. 1982).[2]

Here, Jenkins introduced evidence that gives rise to an inference of unlawful discrimination. *Id.* Jenkins stated that Curry told him not to issue citations or write-ups for code inspections related to white property owners but stated that citations and write-ups should be issued immediately to black property owners. Doc. 74, Pl.'s App'x, 13. Curry shouted at Jenkins "I am working on getting your ass out of here and trying to get your fired." *Id.* at 14. Jenkins filed multiple complaints against Curry. *Id.* at 14–19. Those grievances were never resolved. *Id.* at 19. And then Curry served on the panel that failed to promote Jenkins. *Id.* at 23. These facts give rise to an inference of discrimination and are enough to satisfy the low threshold of establishing a prima facie case. *See Jones*, 669 F.2d at 284.

2. <u>The City Produced a Legitimate, Non-discriminatory Reason for Not Promoting Jenkins.</u>

The City also met its burden to produce "a legitimate, non-discriminatory reason" for not promoting Jenkins. *See McCoy*, 492 F.3d 551 at 557. "[A] defendant only fails to meet [the] burden of production if [he] 'has failed to introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Cole v. Quality Carriers, Inc.*, No. 23-30556, 2024 WL 937053, at *3 (5th Cir. Mar. 5, 2024) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)) (emphasis omitted).

---

[2] The Court notes that what may be used to establish a prima facie case does not "mean that such evidence is conclusive. While *prima facie* evidence is sufficient to establish a fact, a fact so established is subject to rebuttal." *Kuperman v. ICF Int'l*, No. 08-565, 2008 WL 1151871, at *5 n.12 (E.D. La. July 25, 2008).

The City produced evidence that it decided not to promote Jenkins because there were more qualified candidates and because of Jenkins's employment history. The City stated that each of the 26 candidates interviewed were asked the same 11 questions and each panelist scored each answer individually. Doc. 61, Def.'s App'x, 192–206, 214. The facilitator then compiled these scores to determine an "Overall Rating" and provided the five candidates with the highest overall score to the Hiring Manager. *Id.* at 188, 214. None of the panelists awarded Jenkins an overall ranking of "Very Highly Qualified," while they did for other candidates. *Id.* at 188–91. Panelist Contreras ranked at least seven candidates as more qualified than Jenkins and Panelist Garcia ranked at least five candidates higher than Jenkins. *Id.* at 188–91. Four of the five candidates selected were working in positions with a higher grade than Jenkins's. *Id.* at 101–06, 385–86, 411–12, 631. Additionally, Jenkins's employment history with the City included a "Less Than Fully Successful" annual performance review, a three-day suspension for spraying mace at a dog while driving a City vehicle, and a failed promotional probationary period. *Id.* at 150–57, 180–83.

The City also produced evidence that Curry's scoring of Jenkins did not stand out compared to how he ranked other candidates. Curry rated Jenkins with an overall ranking of "Qualified," which was the same rating he gave to 62% of candidates. Further, some candidates that Curry ranked as qualified proceeded to the next round of interviews. *Id.* at 188–91.

3.  Jenkins Cannot Prove that the City's Reasons Were Pretextual.

To survive a motion for summary judgment, a plaintiff must show that "a reasonable jury could . . . find that she has proven pretext by a preponderance of the evidence." *See Baumeister v. AIG Global Inv. Corp.*, 420 F. App'x 351, 354 (5th Cir. 2011). Here, state and federal law differ. Under Title VII, the employee must "prove by a preponderance of the evidence that the legitimate

reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't*, 450 U.S. at 253. The TCHRA requires a less demanding showing. A plaintiff can prove discrimination by establishing that "either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor." *Reed v. Neopost USA*, Inc., 701 F.3d 434, 439–40 (5th Cir. 2012) (internal citation omitted). Jenkins cannot show pretext under either standard.

As the Court noted in a previous order, "Jenkins must establish that he was denied the promotion because of Curry's lower ranking" to prevail on his discrimination claims. Doc. 41, Mem. Op. & Order, 11. Jenkins must do so because Curry's lower ranking is the only action he identifies that could be motivated by racial animus. But Jenkins is unable to provide evidence to establish this. Jenkins essentially argues that he would have received the promotion were it not for Curry's low rankings. Doc. 31, Am. Compl., 26 ("[B]ut for the racist and retaliatory bad rankings by one panel member, Mr. Curry, Jenkins would have been promoted."). However, three of the five candidates who proceeded to the next round of interviews received the same score from Curry that Jenkins received, and received a higher score from the other two panelists. Doc. 61, Def.'s App'x, 188–91. *Id.* And Jenkins does not claim that his scores from the other two panelists were unfair. Doc. 74, Pl.'s App'x, 23. Additionally, each of the top five recommended candidates received at least one "Very Highly Qualified" Overall Rating from one of the panelists. *Id.* at 279; Doc. 61, Def.'s App'x, 188–91. No panelist gave Jenkins an Overall Rating of "Very Highly Qualified." *Id.* at 188–91.

The record also does not show that Curry gave Jenkins a low score because of his race. Curry rated ten candidates as "Very Highly Qualified" or "Highly Qualified." *Id.* Of these ten candidates, 60% were African American (the same race as Jenkins). *Id.* at 188–91, 219. In fact, Curry ranked more African American candidates as "Very Highly Qualified" or "Highly Qualified" than the other panelists. *See id.* And ultimately, three of the five individuals selected for the promotion were African American. *Id.* at 219. While these facts were not enough to prevent Jenkins from making a prima facie case of racial discrimination, they do help rebut the inference of discrimination. *See Jenkins v. City of Dall.*, No. 3:22-CV-0960-B, 2023 WL 3514455, at *7 (N.D. Tex. May 17, 2023) ("the fact that other individuals within Jenkins's protective class were promoted instead of him is not 'outcome determinative, [but it] is certainly material to the question of discriminatory intent' and can be factored into the Court's analysis.") (quoting *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 1997).

The Hiring Manager had the opportunity to invite Jenkins for a second round of interviews irrespective of Curry's rankings but chose not to do so. Doc. 61, Def.'s App'x, 212–13. And the Hiring Manager invited candidates to interview who also only received a "Qualified" ranking from Curry, so Curry's ranking did not disqualify Jenkins from receiving another interview. *Id.* at 188–91. Instead, the record suggests several independent grounds for why the Hiring Manager chose not to invite Jenkins for a second round of interviews. Jenkins received at least one "Less Than Fully Successful" annual performance review, he was suspended for three days in 2015 for spraying mace on a fenced dog while inside his City vehicle, and he failed a promotional probationary opportunity approximately one year before his interview for the Supervisor II position. *Id.* at 150–57, 180–83.

Lastly, Jenkins cannot demonstrate that he was clearly better qualified than the two individuals—Galvez and Castillo—who were selected for the promotion outside of his protected class. "In order to establish pretext by showing the losing candidate has superior qualifications, the losing candidate's qualifications must leap from the record and cry out to all who would listen that he was vastly—or even clearly—more qualified for the subject job." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) (internal quotation omitted.). Jenkins argues that Galvez and Castillo were less qualified because they had less experience than Jenkins as code enforcement officers. Doc. 73, Resp., 12. However, the City showed that both Galvez and Castillo had already been promoted to positions with a higher grade than Jenkins and had greater supervisory and organizational responsibilities than Jenkins. Doc. 61, Def.'s App'x, 385–86, 631, 101–06, 500–17. Jenkins also argues that they were less qualified because they did not have an International Code Council Certification. *Id.* at 12–13. However, this certification was not a requirement for the position. Doc. 61, Def.'s App'x, 106. Thus, Jenkins failed to establish pretext by demonstrating his superior qualifications.

The only other evidence Jenkins offers to support his theory of racial animus is that six years earlier, Curry told him not to issue citations or write-ups for code inspections related to white property owners and to issue them immediately to black property owners. Doc. 74, Pl.'s App'x, 13. Jenkins also states that Curry shouted, "I am working on getting your ass out of here and trying to get your fired." *Id.* at 14. These facts alone cannot prove that the City's reasons for not promoting Jenkins in 2020 were pretext for racial discrimination. *See Baumeister*, 420 F. App'x at 354. Likewise, Jenkins cannot prove that Curry's racial animus was a motivating factor in the City's decision to not promote him. *See Reed*, 701 F.3d at 439–40. Thus, the Court grants the City

summary judgment on Jenkins's Title VII and TCHRA discrimination claims and dismisses them with prejudice.

B.    *The City Is Entitled to Summary Judgment on Jenkins's Retaliation Claims.*

The Court **GRANTS** the City summary judgment on Jenkins's retaliation claims. As with discrimination claims, the *McDonnell Douglas* framework applies to retaliation claims that are based on circumstantial evidence. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020). Jenkins's state-law retaliation claim is analyzed under the same framework as his federal claim. *Parga v. ADT Sec. Servs.*, No. EP-15-CV-9-DB, 2016 WL 8919154, at *3 (W.D. Tex. Mar. 22, 2016); *see Spencer v. FEI, Inc.*, 725 F. App'x 263, 267 (5th Cir. 2018) ("The TCHRA is modeled after federal civil rights law and purports to correlate state law with federal law in the area of discrimination in employment." (quotations and alterations omitted)).

1.    Jenkins Established a Prime Facie Case.

To make a prima facie case of retaliation, Jenkins must show that (1) he "engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (internal quotations and citation omitted).

First, Jenkins engaged in a protected activity. "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002). The discriminatory practices need not be unlawful in fact. Rather, Jenkins must show that he had a "reasonabl[e] belief that the employer was engaged in unlawful employment practices." *Byers v. Dallas Morning News*, 209 F.3d 419, 428

(5th Cir. 2000). The Court has already held that Jenkins engaged in a protected activity by filing a series of grievances against Curry. Doc. 41, Mem. Op. & Order, 18 ("Jenkins engaged in a protected activity when he filed several written grievances with the City against Curry for racial discrimination and harassment."); Doc. 20, Mem. Op. & Order, 20 ("The grievances against Curry do constitute protected activity under Title VII. 'The filing of an internal discrimination complaint is a protected activity.'" (citing *Reffell v. Tex. Dep't of Aging & Disability*, 2008 WL 11348327, at *6 (N.D. Tex. Sept. 5, 2008) (Cummings, J.)).

Second, an adverse employment action occurred: Jenkins was not promoted. *See Gordon v. Peters*, No. 07-20477, 2008 WL 162866, at *2 (5th Cir. 2008) ("a failure to promote is an adverse employment action.").

Third, "a causal link existed between the protected activity and the adverse action." *Banks*, 320 F.3d at 575. After Curry learned that Jenkins filed grievances against him with the City, Curry allegedly "yelled at Jenkins and promised Jenkins that he would make sure Jenkins 'never' got a promotion." Doc. 74, Pl.'s App'x, 20. When Jenkins later sought a promotion to the Supervisor II position, Curry was one of three individuals tasked with evaluating Jenkins. *Id.* at 23. Curry gave Jenkins the lowest marks of all the panelists. Doc. 61, Def.'s App'x, 190. In part due to the low marks from Curry—in contrast to the high marks from the other two interviewers—Jenkins was not promoted. Giving Jenkins the lowest rankings, after previously promising to "make sure Jenkins 'never' got a promotion," demonstrates a causal connection.[3]

---

[3] The Court notes that demonstrating but-for causation is not necessary at the prima facie stage of a retaliation claim. *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241–42 (5th Cir. 2019).

2.  The City Produced a Legitimate, Non-discriminatory Reason for Not Promoting Jenkins.

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its adverse action. *See Tex. Dep't of Cmty. Affs.*, 450 U.S. at 253. For the same reasons the City showed a legitimate, non-discriminatory reason for not promoting Jenkins, the Court finds the City produced a legitimate, non-retaliatory reason for not promoting Jenkins: there were more qualified candidates.

3.  Jenkins Cannot Prove Pretext.

If an employer meets the burden of producing "a legitimate, non-discriminatory reason" for its adverse employment action, then the burden shifts back to the plaintiff to show the employer's reason is pretextual. *Brown*, 969 F.3d at 577. "[T]o survive a motion for summary judgment, a plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the adverse employment action but for the protected activity." *Id.* (citation omitted). "[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises" if the adverse employment action would have occurred "even in the absence of the protected conduct." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996) (citations omitted). The TCHRA also uses a but-for causation standard for proving retaliation. *Apache Corp. v. Davis*, 627 S.W.3d 324, 335 (Tex. 2021).

Jenkins cannot show that he would have received the promotion but-for filing grievances against Curry for the same reasons he could not show pretext for his discrimination claim. As already discussed above, Curry's lower rankings alone do not serve as the explanation for why Jenkins was not invited for a second interview. While this might have sufficed to establish a prima facie case of retaliation, a reasonable jury could not find that the City's decision not to promote

Jenkins was pretext for retaliation because of the grievances Jenkins filed against Curry. In effect, even if Curry threatened that that he "would make sure [Jenkins] 'never' got a promotion" Doc. 74, Pl.'s App'x, 20, Curry's comparatively low rating did not serve as the but-for cause for Jenkins' failure to get promoted. Other candidates who received the same score from Curry advanced to the next round of interviews. Doc. 61, Def.'s App'x, 188–91. Therefore, the Court grants the City's Motion for Summary Judgment on Jenkins's retaliation claims and dismisses them with prejudice.

C.    *The Court Denies as Moot the City's Motion to Strike.*

Lastly, the Court denies as moot the City's Motion to Strike (Doc. 80) because the Court did not need to consider the charts the City seeks to exclude when ruling on the merits of this Order.

## IV.

## CONCLUSION

The Court **GRANTS** the City's Motion for Summary Judgment (Doc. 59) and **DISMISSES** Plaintiff Tommy Jenkins's Complaint in its entirety **WITH PREJUDICE**. The Court **DENIES AS MOOT** the City's Motion to Strike (Doc. 80). A final judgment will follow.

SO ORDERED.

SIGNED: April 9, 2025.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE